## Howard *v.* African Episcopal Church of St. Thomas, Appellant.

*Church law—Episcopal church—Election of vestrymen.*

1. Where the charter of an Episcopal church provides that vestrymen "shall be chosen from time to time by the members of the said church" "agreeable to its constitution," which in turn provides that "no person to have a vote except those who have been regularly admitted, and shall have been a member of the church twelve months

preceding the election," a by-law requiring more than twelve months' membership as a prerequisite to voting, is repugnant to the charter and constitution, and is invalid.

2. In such a case where a person has been a pledged member of the church for twelve months prior to the election, he may on the day of the election pay his dues and be entitled to vote.

3. A resolution of the vestry which required that the dues of a current year must be paid within the year, and that if they were not so paid a member could not vote in the following year, is unreasonable and invalid.

Argued Oct. 25, 1912.   Appeal, No. 167, Oct. T., 1912, by defendants, from decree of C. P. No. 4, Phila. Co., March T., 1912, No. 2,239, on bill in equity in case of James T. Howard et al. v. The Minister, Churchwardens and Vestrymen of The African Episcopal Church of St. Thomas, in the city of Philadelphia (a corporation); A. C. V. Cartier et al.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Bill in equity for the appointment of a master to conduct a church election.

The case was referred to Charles Biddle, Esq., who reported as follows:

That the articles of incorporation of said church provide for an election of the minister, churchwardens and vestry of said church.

That by said articles of incorporation it is provided that after the church is regularly organized the mode of choosing officers of the church shall be by ballot, no persons to have a vote except those who have been regularly admitted and shall have been members of the church for twelve months preceding the election.

That on February 19, 1912, the vestry passed the following resolution:

"Resolved, That all male members who were qualified to vote at the last Easter election (1911) and who have paid at least four dollars and eighty cents ($4.80) as dues during the current fiscal year shall be eligible to vote at the next Easter election 1912 for vestrymen."

That a similar resolution was adopted on March 21, 1911, except that it provided that members only who were qualified to vote at the election of 1910 should have the privilege of voting in 1911.

That the corporation was being badly managed by the present vestry, and that they had been in office for a long period of time.

That the resolutions passed were made for the purpose of fraudulently continuing the said vestry in office, and were contrary to the articles of incorporation, unreasonable and not for the good government of the church.

That a number of the members had tendered their dues to the vestry, which tenders had been refused, and no information given to them as to their indebtedness to the said church; that by such means the present vestry had fraudu-/ lently attempted to prevent the complainants and certain other members of said corporation from qualifying to vote at the then forthcoming election so that they, the said vestrymen, should fraudulently continue in office.

That the election to be held on March 8, 1912, would be conducted in a way that would improperly keep the present vestry in office.

The complainants therefore prayed that the defendants be restrained from conducting the election under the foregoing resolutions of the vestry, and that the court direct your master to act as judge of said election and see that it was properly conducted, and report thereon to your honorable court.

The defendants filed an answer to this bill of complaint, admitting the allegations as to the passage of the various resolutions but denying that they were passed for the purpose of continuing the present vestry in office or in any way to fraudulently prevent a proper election. The answer admitted that the present vestry had been in office for a long time, but alleged that its members had conducted matters in a proper and legal way and had not spent or converted any of the moneys of the church unlawfully or to

their own use, and that no one had been or would be fraudulently prevented from voting.

That the resolutions complained of were not unreasonable or unconstitutional.

That they had complied with the rules and customs of the church, and therefore prayed that they might be discharged with their reasonable costs.

### FINDINGS OF FACT.

There is practically no dispute as to the main and important facts in this case, the difference between the parties being confined to the conclusions to be drawn from them. It is not denied that the vestry passed the resolutions complained of and refused to receive the money when offered by members of the church; the complainants claim that these acts were prompted by a desire to fraudulently control the election and retain the present vestry in office, the defendants on the other hand maintaining that what they did was for the benefit and good government of the church and in every way legal and proper.

Your master does not find sufficient evidence to warrant the conclusion that there was any fraudulent purpose on the part of the vestry. He believes their actions were prompted by a desire to restrict the franchise, but this they had been doing for a number of years and evidently believed they had the power. Your master is of opinion that they exceeded their powers in passing the resolutions complained of and in striking members from the roll and refusing to allow them to vote even when their indebtedness to the church had been paid. His reasons for these conclusions can be better explained by a review of his action in considering the validity of the challenges to voters made upon the night of the election.

Nineteen of the voters who presented themselves were challenged. The following seven—(1) Alonzo Porter, (2) John H. Warren, (5) Thomas J. Manly, (6) A. L. Manly, (9) Edward Rosell, (12) Charles E. Cornish, and (15) Percy Abrams—were challenged on the ground that they

were not · eligible to vote under the above-mentioned resolution of the vestry adopted February 19, 1912. The secretary of the vestry, Mr. Williams, challenged these men, and stated that while they had paid dues amounting to $4.80 per annum and had been pledged members of the church for more than a year, they were not qualified to vote "at the last Easter election of 1911," and therefore, under the resolution of February 19, 1912, could not vote at the election of 1912. Your master is of opinion that this is not a valid objection, and accepts the votes of these seven men.

Under the third article of a certain resolution which was incorporated in the constitution of the church by sec. 2 of that instrument (see sec. 7 of the bill, p. 4), it is provided:

"Thirdly. . . . No person to have a vote except those who have been regularly admitted, and shall have been a member of the church twelve months preceding the election."

This article, under the ruling in the case of Com. v. Cain, 5 S. & R. 510, cannot be changed by a by-law or resolution.

It is admitted by all parties that if a man has given a verbal or written pledge to pay $4.80 a year to his church and has been such pledged member for twelve months prior to the election and is not in arrear for his dues, he is a member in good standing, and unless the resolution of February 19, 1912, is binding, he has a right to vote. The challenger in the case of these voters asserted that under the resolution of February 19, 1912, a man, before he had a right to vote at the election held April 8, 1912, must show that he was entitled to vote at the Easter election of 1911; that is, he could not vote unless he had been a member of the corporation for two years, or for a year prior to Easter, 1911,—a membership of that length of time being necessary in order to qualify him as a voter in 1911. This restriction, to the mind of your master, is contrary to the constitutional right of the voter and not

a reasonable by-law for the good government of the church. It contradicts and overrules the constitutional provision above quoted.   This provision in the constitution is more than a mere limitation.   It does not say that a voter must have been a member for at least twelve months; it says no person is to have a vote except those who have been members of the church twelve months preceding the election.   The vestry have not, therefore, the power to say that a man must be a member for twenty-four months before he can vote.   The Supreme Court in Com. v. Cain, 5 S. & R. 510, say:

"If the by-law in question can by fair argument be be made out to be in contradiction to it (the constitution), its validity cannot be supported."

The resolution of the vestry of February 19, 1912, disfranchises those who under the constitution had a right to vote; it is an attempt to increase the length of time a man must be a member before he has that right.   Messrs. Rawle and Ingersoll in the case quoted above argued that the charter in a negative way conferred the right to vote on all who were members of the church twelve months preceding the election, and that this right could not be changed by a by-law.   The Supreme Court would seem to confirm this view, but they say that a by-law necessary for the good government of the church—such as one requiring the payment of dues or pew rent—and not contradicting the constitution, would be valid.   In the opinion of your master the resolution of February 19, 1912, is not necessary for the good government of the church, and is moreover an unreasonable restriction of the right to vote and vitiates the charter provision.   There is no evidence that even if the charter had not provided that twelve months' membership carried the right to vote, a longer membership would be for any reason desirable or would in any way cure an existing evil.   This provision would therefore seem to have no purpose in view that would justify the vestry in enacting it.

The remaining challenges, with the exception of three,

were made on the ground that the voters had failed to pay their dues in 1911, and that having failed to pay them at that time they could not cure this defect by paying them now and rendering themselves able to vote at the present election of 1912. This reason for challenge was also based upon the resolution of 1912, which provided that a voter in order to be eligible in 1912 must have been eligible to vote at the election of 1911, and according to the by-laws, in order to be eligible in 1911 he must have paid his dues up to that time. In addition to this objection it was urged in several cases that the names of the members asking to vote had been dropped from the rolls. Your master is of opinion that these votes should be received. The objection based on the nonpayment of dues is not well taken, if the voter before he asks the privilege of voting offers to pay what he owes to the church. There is no by-law or constitutional provision which requires a member to pay his dues at any given time prior to the election—unless the resolution of February 19, 1912, is valid and can be construed as having this meaning. If the by-law is valid, and a man has failed to pay his dues in 1911, he is disfranchised for the year 1912 even though he may be willing during 1912 to pay all his indebtedness. It is of course true that a man in order to be eligible in 1911 must have paid the dues that he owed in that year, but why should he be disfranchised in 1912 if he has before the election in the latter year paid his debt? This would seem an unreasonable restriction upon the voter of 1912.

A man should have the right to pay his debts within a reasonable time after they are due, and if they are payable the day before the election of 1911 he should not be disfranchised in 1912 because he pays them the day after such election. The vestry have not said within what time the dues of members must be paid, and this interpretation of the resolution of February 19, 1912, would create a particularly onerous restriction upon the members of the church, and one which would not seem to be for the good government of the church. For this reason

your master finds that the resolution of February 19, 1912, so far as it required a man to be a member of the church for more than twelve months before he had a right to vote, and so far as it required that the dues of 1911 must be paid in 1911, and that if they were not so paid a member could not vote in 1912, is unreasonable and therefore invalid.

The voters who were in arrears tendered their arrearages, and your master received the money, amounting to $112.80. Many of them claimed that the money had been tendered at a prior time; but whether this is true or not, there was no evidence to show that if they paid their arrearages at any time before voting they had not complied with the by-laws of the church. The fact that some of these men had been removed from the rolls of the church for the nonpayment of dues was not a sufficient reason to sustain the challenge; it was shown that while there were resolutions which prevented a man from voting until he had paid his dues, there was no resolution or by-law which authorized the secretary of the vestry to automatically strike from the rolls any man who was two years in arrear, either for pew rent or what was substituted for pew rent when the church sittings were made free— his dues to the amount of $4.80 per annum. The secretary of the vestry testified that if a man was two years in arrear, the vestry took no action upon the matter, nor was any notice sent to the delinquent that he would be taken from the rolls, but that he, the secretary, just left their names off the next year's roll. There was nothing in the constitution or by-laws that warranted the secretary in doing this without instructions from the vestry and some notice to the delinquent; neither of these requisites were fulfilled.

Two of the men whose names did not appear on the roll had envelopes sent them for their dues, and some of them were not two years in arrear. Your master held, however, that even had they been two years in arrear they could pay the amount of their arrearages and vote, as

nothing was produced except the resolution of February 19, 1912, that warranted the contention (see claim of counsel for defendants, pp. 23–24) that the money due in 1911 must be paid in 1911, and if it had not been so paid the member was irrevocably disfranchised for 1912.

The card system for keeping the accounts and registering the members of the church was only put in force in 1910. It was not kept with care, and little reliance could be placed upon it. Therefore your master gave it little consideration.

There were three voters whom your master did not consider eligible:

Henry G. Owens, who does not appear to have been a pledged member of the church for twelve months prior to the election. In June, 1911, he paid his dues, and paid at that time an amount that was to be considered paid as of March first. This, of course, could be done, but by so doing a man could not add to the number of months in which he was pledged. His membership must date from the time the pledge was made, which in this case was June, 1911.

The other two voters, A. B. Jackson and Samuel H. Jones, do not appear to have paid up the full amount of their arrearages prior to their having tendered their votes. Their votes therefore cannot be received.

Excluding these three votes, the result of the election is as follows: . . . .

On exceptions the master reported as follows:

After notice was sent that your master's report was ready, exceptions were filed on behalf of the defendants, a copy of which exceptions is attached to this report.

A meeting was held for argument upon these exceptions. It does not seem necessary to further review the points upon which the exceptions are taken, except in so far as it may be required to answer counsel for the defendants who stated at the meeting that he relied upon certain matters which had not been called to the master's attention. He stated that it appeared by the oral testimony

that Alonzo Porter, Percy Abrams, Charles E. Cornish, Egbert E. Rosell, A. L. Manly, Thomas J. Manly and John H. Warren had paid their dues, when they asked leave to vote, but it did not appear that they had only paid their dues for 1911 in March preceding the election of 1912, that this fact would be shown by the cards upon which their payments had been registered by the secretary and by the original roll upon which they had been entered. That as all of the cards upon which the church members' names were written had been offered in evidence, he asked leave to refer to the cards of voters whose names have been given and the original roll for the purpose of showing when their dues were paid.

Your master permitted this reference to be made, and it was shown from the cards and original rolls that were submitted that the men mentioned, with the exception of John H. Warren, had paid their dues for the years 1911 and 1912 in March of 1902, John H. Warren paying only the dues for 1912 at that time. It also appeared from the cards that all these men had been enrolled members of the church since 1910 and the dues had been paid in the year 1910 in a number of cases. Counsel for defendants then stated that while the secretary who challenged these voters had in his testimony upon the night of the election shown that all these men had paid their dues prior to that time, he did not go far enough and state that the dues for 1911 had been paid in the year 1912, and that this fact made these voters ineligible.

For the purpose of sustaining this contention counsel for the defendants referred to the case of Juker v. Com., 20 Pa. 484.

Your master has gone carefully over the case referred to and the facts thus presented, but is still of opinion that the votes of the men whose names are enumerated above should be received and counted. There is nothing in the by-laws which warrants the contention that a vote could not be received in 1912 unless the voters' dues of 1911 had been paid in 1911, and that if this had not been done, the

voter was disfranchised in 1912. The only by-law which counsel for the defendants relies upon for this restriction is the by-law already quoted, passed February 19, 1912. This by-law provides two things:

First. In order to make a man eligible to vote in 1912, he must have been a qualified voter at the election of 1911.

The first part of this by-law if it is construed in accordance with its words and the natural consequence of its provisions, requires a man (as has already been pointed out in the opinion filed in this case) to be a member of the church for twelve months preceding the election of 1911, and he must have paid his dues up to that time, otherwise he would not have been qualified to vote in 1911. This provision your master does not consider the vestry had authority to pass.

Second. The second part of the by-law provides that the voter in 1912 must "have paid at least $4.80 as dues during the current fiscal year." The only words, therefore, regulating the payment of the dues thus expressly state that these dues must have been paid during the current fiscal year. With no other by-law regulating the time within which this payment of dues should be made, your master can see no reason for holding that if the dues of 1911 were not paid by a member in 1911, he had no right to vote at the election of 1912. Originally the church had a by-law that no man could vote who was more than two years in arrears with his pew rent; this by-law (as no pew rents are now charged) has been substituted by the provision that a voter must have paid his dues for the current year; the vestry have a right to provide that these dues must be paid, and that if they are not paid by a certain date before the election the member shall not be qualified to vote; but this the vestry have not done —they merely provide that the dues must have been paid during the current fiscal year. And your master permitted this to be done.

It does not seem advisable that he should change these views by reason of the case of Juker v. Com., 20 Pa. 484,

quoted by counsel for the defendants. In that case an attempt was made to have a number of men vote who had not been connected with the church prior to the time when they tendered their votes and offered the money for their dues. There was an attempt made to create voters out of men who prior to that time had no interest whatever in the church; this the court said could not be done. That the by-laws in that case provided that a member in order to have a right to vote must be an annual subscriber, thus clearly indicating that he was to have been at least a man who had paid for a year an annual subscription. This case, therefore, would not be applicable to the case at bar, where there was no attempt made to have men vote who had not been connected with the church prior to the time at which the vote was being cast. The men who were allowed to vote had been pledged members of the organization for at least twelve months prior to the election, as the constitution provides, and many of them had been pledged members for a much longer period. In one case a man who had not been a pledged member for twelve months asked the privilege of voting, but his vote was not received. It was alleged that some of these men did not attend the church regularly, but this does not seem material. They were upon the rolls and upon the cards as pledged members of the church for a greater period than twelve months, and they were put upon those cards because they were men of good standing in the church; they were put on the rolls either with the recommendation from the vestry or the congregation, or, they were placed there because they were communicants and were thought proper persons by the officers of the church to be there, and this the testimony shows was all that was necessary to constitute them members of the church.

Under these circumstances, your master recommends that these exceptions be dismissed.

*Error assigned* was the decree entered in accordance with the report of the master,

*J. A. Robbins,* for appellants.

*A. S. Weill,* with him *L. Stauffer Oliver,* for appellees.

PER CURIAM, November 18, 1912:

After careful consideration of this case, we are unanimously of opinion that it was correctly decided and that the decree should be affirmed for the reasons given in the original and supplemental report of the master.

The decree is affirmed, the costs of the appeal to be paid by the appellants.